## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KRISTIE SMALL,<br>6348 Cavalier Corridor<br>Falls Church, VA 22044 | ) )<br>)<br>)<br>) | Case No. 1:19-cv-1314 |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **JURY TRIAL DEMANDED** |
| OFFICE OF CONGRESSMAN<br>HENRY CUELLAR,<br>2372 Rayburn House Office Building<br>Washington, DC 20515, | )<br>)<br>)<br>)<br>) | |
| Defendant. | )<br>) | |

## COMPLAINT

Plaintiff KRISTIE SMALL, by her undersigned counsel, and complains of Defendant OFFICE OF CONGRESSMAN HENRY CUELLAR as follows:

## NATURE OF THE CASE

1.  Hiring Kristie Small as Deputy Chief of Staff was an easy decision for Congressman Henry Cuellar. Small was an ideal candidate for the position. She has a degree in Political Science and 14 years of experience working on Capitol Hill. Her record is outstanding, and she welcomes a challenge. Small began working for Cuellar on June 1, 2018. She dove into her new duties —training staff in DC and Texas, familiarizing herself with Cuellar's legislative issues, and improving office efficiency. She received positive feedback from both Cuellar and his staff.

2.  But everything changed on August 8, 2018. Shortly after she began working for Cuellar, Small learned that she was pregnant. On August 8, she emailed Cuellar to request maternity

leave, per office policy.  Cuellar responded: "Ok let's talk about this and probation period

for you as I have for every new employee."  This was curious.  Cuellar had never mentioned

a probation period before he learned about Small's pregnancy.  Contrary to what he said,

none of the other employees had been on a probationary period.  However, none of those

employees were pregnant women.

3.   On October 16, 2018, Cuellar called Small on the phone and fired her for failing to perform

during a probationary period that only applied to pregnant female employees.  This is an

action to recover damages for Defendant's unlawful discrimination, in violation of the

Congressional Accountability Act ("CAA").

## JURISDICTON AND VENUE

4.   This Court has jurisdiction over the claims pursuant to 2 U.S.C. § 1408(a).  Plaintiff (a) is a

covered employee by virtue of her employment with Defendant; (b) completed counseling

and mediation pursuant to 2 U.S.C. §§ 1402–03; and (c) timely filed this civil action.

5.   Venue is proper because Defendant formerly employed Plaintiff in the District of Columbia.

## THE PARTIES

6.   During the relevant time period, Plaintiff was Defendant's employee within the meaning and

subject to the protections of the CAA.

7.   Defendant is a federal legislative entity primarily located in the U.S. Capitol Complex in

Washington, DC.

8.   During the relevant time period, Defendant was Plaintiff's employer within the meaning and

subject to the requirements of Title VII of the Civil Rights Act of 1964, as applied by the CAA.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.   Plaintiff exhausted her administrative remedies pursuant to the CAA.

10. On October 23, 2018, Plaintiff submitted a request for counseling for claims of sex discrimination and pregnancy discrimination.

11. The mediation period began on November 20, 2018, and ended on February 5, 2019.

12. Plaintiff timely files this Complaint no sooner than 30 days, but no later than 90 days, from the end of mediation.

## FACTS

### Plaintiff is a member of a protected class.

13. Plaintiff is female, as is evident based on her name, physical appearance, and other indicators.

14. Defendant learned that Plaintiff is female when Cuellar interviewed Plaintiff in May 2018.

15. During the relevant time period, Plaintiff was pregnant.

16. Plaintiff informed Cuellar about her pregnancy on August 8, 2018.

### Plaintiff has 14 years of experience working on Capitol Hill.

17. Plaintiff graduated from West Virginia University with a bachelor's degree in Political Science and a concentration in English.

18. Shortly thereafter, Plaintiff began working on Capitol Hill as a Scheduler/Staff Assistant.

19. She excelled in her role and was promoted to Legislative Assistant the following year.

20. In May 2007, Plaintiff became a Professional Staff member for a standing committee in the U.S. House of Representatives.

21. Plaintiff had an excellent performance record and no history of misconduct.

### Cuellar hired Plaintiff as Deputy Chief of Staff.

22. In May 2018, Plaintiff applied to work for Defendant as Cuellar's Deputy Chief of Staff.

23. Cuellar learned that Plaintiff is female when he first interviewed her in May 2018.

24. At a subsequent interview, Cuellar offered Plaintiff the position of Deputy Chief of Staff, and Plaintiff accepted.

**Plaintiff successfully performed her job duties.**

25. Plaintiff began her employment with Defendant on June 1, 2018.

26. Throughout Plaintiff's employment with Defendant, the Chief of Staff position was vacant.

27. Therefore, Plaintiff served as Acting Chief of Staff, and she reported directly to Cuellar.

28. Plaintiff's duties included serving as Cuellar's principal liaison; supervising employees; reviewing and approving work product; establishing office policies and procedures; and overseeing the office budget and operations.

29. Plaintiff immediately encountered significant challenges.  Cuellar's office was disorganized and lacked policies and procedures.

30. Plaintiff generally worked at least 10 hours each day to complete her assigned duties, as well as to resolve long-standing administrative issues.

31. Despite Plaintiff's heavy workload and numerous responsibilities, she made significant improvements in the office by establishing policies and procedures, conducting staff training, and improving overall efficiency.

32. Cuellar was aware of Plaintiff's long hours and resolution of many long-standing issues because she sent him an email at the end of each day outlining her accomplishments for the day, per Cuellar's request.

33. Cuellar and his staff gave Plaintiff positive feedback about her performances and the changes she was implementing in the office.

**Cuellar put Plaintiff on probation after learning she was pregnant.**

34. Shortly after she began working for Cuellar, Plaintiff learned that she was pregnant.

35. Pursuant to the Employee Handbook, Plaintiff was entitled to 12 weeks of paid maternity leave.

36. On August 8, 2018, Plaintiff emailed Cuellar to advise that she was pregnant and to request maternity leave, per the Employee Handbook:

> Hi Sir,
>
> Attached I have provided an excerpt from the office maternity leave policy along with my written request for leave.  I have also included the pre-natal appointments process for your information.  I can go over this with you at any time I just wanted to make sure it was on your radar.  Thank you.

37. That afternoon, Cuellar responded by email:

> **Ok let's talk about this and probation period for you as I have for every new employee.**  Trying to finish all items for tomorrow and for Friday.  Need your help.  Also, I have two interviews tomorrow morning and no one has asked: What do you need?  Need your help.

(emphasis added).

38. This was the first time Cuellar said anything about a probation period.  He later informed Plaintiff that she was subject to a 90-day probation period.

39. The Employee Handbook did not mention a probationary period.

40. Plaintiff asked several of her colleagues about probation.  None of them had been on a probationary period or knew anything about it.

41. As far as she knows, Plaintiff was the only pregnant female employee, and she was the only employee subject to a probationary period.

**Cuellar gave Plaintiff positive feedback on September 5, 2018.**

42. On September 5, 2018, Cuellar met with Plaintiff to discuss her performance during the 90-day probationary period established when Plaintiff requested maternity leave.

43. Cuellar told Plaintiff that she was doing a good job and had a great attitude, but that she

needed to work on a few issues.

44. However, Cuellar's criticisms were false.

45. Most of the issues Cuellar mentioned predated Plaintiff's employment, and all of them had improved since Plaintiff joined the office.

46. Cuellar knew about those improvements because Plaintiff sent him daily status reports and otherwise kept him updated about her work.

47. Cuellar told Plaintiff they would meet in 30 days to revisit the issues discussed, thus extending the 90-day probationary period by 30 days.

48. After the meeting, Plaintiff continued to successfully perform her duties.

**Cuellar fired Plaintiff on October 16, 2018.**

49. Cuellar scheduled a call with Plaintiff on October 16, 2018, to discuss her performance during the extension of the probationary period.

50. On October 16, 2018, Cuellar called Plaintiff and terminated her employment for failure to perform during the probationary period.

51. At Plaintiff's request, Cuellar identified the specific tasks he claimed she failed to complete.

52. However, the reasons Cuellar gave for firing Plaintiff were false.

53. Plaintiff successfully completed the tasks Cuellar identified and otherwise performed her assigned duties throughout her employment.

54. Defendant's conduct had a devastating impact on Plaintiff's life.

55. Approximately two weeks after Defendant fired her, Plaintiff delivered her baby, who was stillborn.  At the time, Plaintiff was 30 weeks pregnant.

## COUNT 1
(2 U.S.C. § 1311(a)(1) – Sex Discrimination)

56. Plaintiff repeats and realleges paragraphs 1–55, above, as if fully set forth herein.

57. Defendant terminated Plaintiff's employment on the basis of gender and sex.

58. By and through its conduct, Defendant discriminated against Plaintiff in violation of the CAA.

59. Defendant's actions were intentional, reckless, and/or malicious.

60. As a result, Plaintiff has suffered damages, including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 2
### (2 U.S.C. § 1311(a)(1) – Pregnancy Discrimination)

61. Plaintiff repeats and realleges paragraphs 1–60, above, as if fully set forth herein.

62. Defendant terminated Plaintiff's employment on the basis of pregnancy.

63. By and through its conduct, Defendant discriminated against Plaintiff in violation of the CAA.

64. Defendant' actions were intentional, reckless, and/or malicious.

65. As a result, Plaintiff has suffered damages, including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## JURY DEMAND

Plaintiff demands a trial by jury on all Counts.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant on all counts and award Plaintiff reinstatement; lost wages and benefits; compensatory damages in the amount of $300,000 for pain and suffering and emotional distress; pre- and post-judgment interest; costs; attorney's fees; and any such other relief as is just and proper.

Date: May 6, 2019                                   Respectfully submitted,

                                                    ALAN LESCHT AND ASSOCIATES, P.C.

By:    /s/ Sara McDonough

Alan Lescht [441691]
Sara McDonough [1022641]
Krista Wallace [1048016]
1825 K Street NW, Suite 750
Washington, DC 20006
Tel (202) 463-6036
Fax (202) 463-6067
alan.lescht@leschtlaw.com
sara.mcdonough@leschtlaw.com
krista.wallace@leschtlaw.com
*Counsel for Plaintiff*