UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KRISTIE SMALL**, <br><br> Plaintiff, <br><br> v. <br><br> **OFFICE OF CONGRESSMAN HENRY CUELLAR**, <br><br> Defendant. | Case No. 1:19-cv-01314 (TNM) |

## **MEMORANDUM AND ORDER**

For four months, Kristie Small worked as Deputy Chief of Staff in the Office of Congressman Henry Cuellar (the "Office") until Cuellar terminated her employment. Small claims he fired her because she became pregnant and asked for maternity leave. The Office disputes this and moves for summary judgment. It has compelling arguments that nothing unlawful happened here. But the Court's limited role at this stage is to decide whether the record shows any genuine dispute of material fact. It does, so the Court will deny the Office's motion except as to the pregnancy discrimination claim, which is duplicative of the sex discrimination claim.

**I.**

Small has worked on Capitol Hill since 2005. She started out as a staff assistant and scheduler, then as a legislative assistant, and later as staffer for the House Administration Committee. Pl.'s Statement of Disputed Material Facts ("PSDMF") ¶¶ 4–5, ECF No. 22-1. In 2018, Cuellar hired her to be his Deputy Chief of Staff. Def.'s Statement of Undisputed Facts ("DSUF") ¶¶ 27–28, ECF No. 20-3; PSDMF ¶ 15. The Chief of Staff position was vacant, so

Small was the highest-ranking staffer in the Office. DSUF ¶¶ 27, 33; PSDMF ¶ 20. Her duties included serving as Cuellar's principal liaison, supervising other employees, reviewing work product, and managing the office budget and operations. DSUF ¶ 32; PSDMF ¶ 17.

Small's first day on the job was June 1, 2018. DSUF ¶ 29; PSDMF ¶ 19. About a month later, she requested one day of sick leave, marking "pregnancy" as the reason. Def.'s Attach. G at 40, ECF No. 20-10.[1] Cuellar approved the request. *Id.* About a month after that, Small sent Cuellar a request for maternity leave, along with a schedule of her prenatal appointments. Pl.'s Ex. 22 at 2–4, ECF No. 21-22. Cuellar responded the same day, saying:

> Ok let's talk about this and probation period for you as I have for every new employee. Trying to finish all items for tomorrow and for Friday. Need your help. Also, I have two interviews tomorrow morning and no one has asked: What do you need? Need your help.

Pl.'s Ex. 23 at 2, ECF No. 21-23.

Small claims this was the first she had heard of a probationary period, and Cuellar later informed her that probation ran for 90 days. PSDMF ¶ 57; Am. Compl. ¶ 42, ECF No. 5. The two met on September 5 to discuss how Small had performed during her first 90 days. DSUF ¶ 63; PSDMF ¶ 69. A transcript of this meeting is in the record. Def.'s Attach. G at 25–30. Cuellar gave Small some positive feedback, but he also identified three areas that required improvement: (1) failing to take things "off his plate," such as reviewing press releases thoroughly and keeping tabs on other staffers; (2) failing to train staff adequately; and (3) disregarding his instructions. *Id.* at 26. He then extended the probationary period by 30 days, saying that he wanted to see if Small could improve. *Id.*

---

[1] All page citations refer to the page numbers that the CM/ECF system generates.

Small expressed agreement with Cuellar's assessment, though she now claims his critiques were unfounded and that she did not push back for fear of angering him. *Id.* at 29; PSDMF ¶ 76. She also asked for a pay raise, citing the high cost of putting two children in daycare. Def.'s Attach. G. at 28. Cuellar demurred, suggesting they revisit the issue in 30 days. *Id.* at 28–29.

The two scheduled a phone call on October 16 to discuss Small's performance during the 30-day extended probationary period. DSUF ¶ 91; PSDMF ¶ 86. On this call, Cuellar told Small he was terminating her because she had failed to address the performance issues that he identified at their September meeting. DSUF ¶ 92; PSDMF ¶ 87; Pl.'s Opp'n at 46, ECF No. 21; Def.'s Reply at 22–23, ECF No. 23.

After exhausting her administrative remedies under the Congressional Accountability Act ("CAA"), 2 U.S.C. §§ 1301 *et seq.*, Small sued. Am. Compl. ¶¶ 9–15; Answer ¶¶ 9–15, ECF No. 11. She brings four claims under the CAA, which incorporates the protections of Title VII and the Family and Medical Leave Act ("FMLA"): sex discrimination (Count I); pregnancy discrimination (Count II); FMLA interference (Count III); and FMLA retaliation (Count IV). Am. Compl. ¶¶ 61–80; *see* 2 U.S.C. §§ 1311(a)(1), 1312.[2] The Office moves for summary judgment on all counts, and its motion is ripe for disposition. Def.'s Mot. at 1, ECF No. 20.

## II.

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law" and a dispute is

---

[2] The Court has jurisdiction under the CAA's jurisdictional provision, 2 U.S.C. § 1408(a), and the federal question statute, 28 U.S.C. § 1331.

genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the initial burden of identifying those portions of the record that show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once it has met this burden, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (cleaned up). Courts "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 850 (D.C. Cir. 2006).

### III.

### A.

To begin, the Court grants the Office's motion as to Count II (pregnancy discrimination), which is duplicative of Count I (sex discrimination). Small brings both claims under the CAA, which protects covered employees from "discrimination based on . . . race, color, religion, sex, or national origin, within the meaning of [Title VII]." 2 U.S.C. § 1311(a)(1). The substantive provisions of Title VII list "sex" as a protected characteristic, not "pregnancy." *See, e.g.*, 42 U.S.C. § 2000e–2(a)(1). But the statute defines sex discrimination to encompass pregnancy discrimination: "The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy." *Id.* § 2000e(k).

In other words, Title VII's prohibition on sex discrimination is "a prohibition that includes discrimination on the basis of pregnancy." *Harris v. Gonzales*, 488 F.3d 442, 443 (D.C. Cir. 2007). There is thus no need for a separate "pregnancy discrimination" claim.

In seeking summary judgment on Count II, the Office makes all these points. Def.'s Mem. at 43–44, ECF No. 20-1. Small does not respond, conceding the issue. *See* Pl.'s Opp'n at

47–50.  Indeed, her arguments do not distinguish between Counts I and II, and she nowhere explains how she suffered sex discrimination apart from the fact of her pregnancy.  *See id.* at 1–2, 21–50.  So the Court will grant summary judgment for the Office on Count II, on the understanding that this will not prejudice Small.  Because sex discrimination includes pregnancy discrimination, the Court can explain to the jury that if the Office fired Small because she was pregnant, she wins on Count I.

**B.**

Discrimination claims involve a familiar burden-shifting framework.  The plaintiff has the initial burden of making out a prima facie case of discrimination.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  The employer then must "articulate some legitimate, nondiscriminatory reason" for its decision.  *Id.*  If the employer does so, the burden shifts back to the plaintiff to establish that the proffered reason was pretext for discrimination.  *Id.* at 804.

But once the employer articulates a legitimate, nondiscriminatory reason, the Court "need not—*and should not*—decide whether the plaintiff actually made out a prima facie case."  *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).  Instead, the case becomes all about pretext.  The Court "must resolve one central question:  Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?"  *Id.*

There are several ways an employee can meet this burden:  (1) establishing that the employer treated individuals not in the same protected category "more favorably in the same factual circumstances"; (2) showing that the employer "is making up or lying about the underlying facts that formed the predicate for the employment decision"; (3) pointing to

"changes and inconsistencies in the stated reasons for the adverse action"; (4) showing that the employer failed "to follow established procedures or criteria"; (5) establishing that the employer generally treated employees in the protected category poorly; and (6) pointing to "discriminatory statements by the decisionmaker." *Id.* at 495 & n.3.  This list is not exhaustive.  *See id.*

The Office advances a legitimate, nondiscriminatory reason for Cuellar's decision to fire Small:  her poor job performance, which "manifested in a variety of ways," including her inadequate review of written work product and her failure to train staffers effectively.  Def.'s Mem. at 14; Def.'s Reply at 6.  Plenty of admissible evidence makes this explanation facially credible, so the Office has met its burden of production.  *See Figueroa v. Pompeo*, 923 F.3d 1078, 1087–88 (D.C. Cir. 2019).  Small does not argue otherwise and instead focuses solely on the question of pretext.  *See* Pl.'s Opp'n at 1–2.

For Counts I, III, and IV, the Office seeks summary judgment on one ground:  that poor performance was indeed the real reason for Small's termination, not pretext for unlawful conduct (whether sex discrimination, interference with FMLA rights, or FMLA retaliation).  *See* Def.'s Mem. at 41–46.  So all three counts rise and fall together, and the common question is whether the record shows any genuine dispute of material fact on the issue of pretext.

Small offers four arguments for pretext:  (1) the Office treated her less favorably than nonpregnant comparators; (2) the Office deviated from its regular practice by placing her on a 90-day probationary period; (3) her job performance was not poor enough to warrant termination; and (4) the Office has given shifting reasons for her termination.  Pl.'s Opp'n at 21–22.  Some of these arguments are stronger than others.

For starters, the Court agrees with the Office that Small provides no meaningful comparator evidence.  She cites three sets of alleged comparators:  press and legislative staff who

6

were not disciplined for making errors in drafts; a scheduler who was not disciplined for insubordination; and a legislative staffer who was not disciplined after requesting a raise. *Id.* at 39–40.

Small does not even attempt to explain how any of these employees were similarly situated to her. *See id.* This is unsurprising, because there is at least one glaring difference between her and them: she was the Deputy Chief of Staff, a managerial position, and they were her subordinates. DSUF ¶¶ 3, 32–33; PSDMF ¶¶ 17, 20; *see* Def.'s Reply at 16–17. Thus, their respective employment situations were far from "nearly identical." *See Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015) (noting that factors bearing on "whether someone is an appropriate comparator" include "the similarity of . . . jobs and job duties" and "whether they were disciplined by the same supervisor"). If this were Small's only argument for pretext, the Court would readily grant summary judgment for the Office.

But it is not. Having reviewed the record, the Court finds that there are genuine disputes of material fact on the following issues:

1. <u>The probationary period</u>. There is certainly evidence that a 90-day probationary period for new employees is a longstanding policy in the Office. DSUF ¶¶ 140–47. There is also evidence that Cuellar always believed Small was subject to this probationary period. *Id.* ¶ 141. But there is evidence going the other way, enough to create a genuine dispute about whether this probationary period was applied consistently to all new employees.

Small claims that she first learned of the probationary period when Cuellar responded to her email requesting maternity leave. Pl.'s Ex. 1 at 10, ECF No. 21-1. Another staffer says no one informed her she was on a probationary period when she started. Pl.'s Ex. 7 at 5, ECF No. 21-7. The first this staffer heard of the policy was on a conference call *after* Small was fired. *Id.*

7

at 5–6.  Indeed, construing the facts in the light most favorable to Small, as the Court must, *Mastro*, 447 F.3d at 850, this conference call arguably instituted a blanket probationary policy that had previously not existed.  The Office's legislative director claims he did not have a performance review at the end of his first 90 days of employment.  Pl.'s Ex. 8 at 5, ECF No. 21-8.  And one staffer believes that her probationary period was for 30 days, not 90.  Pl.'s Ex. 24 at 5–6, ECF No. 21-24.  More, the Office's Employee Handbook did not mention this probationary period until it was amended in March 2019, after Small's termination.  *Compare* Pl.'s Ex. 4 at 36, ECF No. 21-4, *with* Pl.'s Ex. 36 at 2–3, ECF No. 21-36.

Is any of this material?  The Office points out that Small's employment was at-will and that Cuellar even extended her probationary period by 30 days, undercutting the notion that he used this probationary period as cover for discrimination.  Def.'s Reply at 13.  That is a strong argument, one that the Office can make to the jury.  But if Cuellar first raised the probationary period when directly responding to Small's request for maternity leave, that is suggestive.  More, the allegation that the Office did not consistently impose probation would contradict Cuellar's email claiming otherwise, *see* Pl.'s Ex. 23 at 2, bolstering Small's pretext argument.  If the probationary period was applied inconsistently, a reasonable jury could find that Cuellar decided to give Small added, harsher scrutiny because she was pregnant and asked for leave.  It could also find that these motivations tainted his assessment of her job performance and carried over into his decision to fire her.

       2.      <u>The reasons for firing Small</u>.  There is abundant evidence that Cuellar "honestly and reasonably believed" Small had performed poorly.  *Brady*, 520 F.3d at 496 (emphasis omitted).  But even here, there is some lack of clarity.

The Office repeatedly cites work product as a leading example of Small's poor performance. One of her duties was to review press releases and the like before they were sent to Cuellar, yet, the Office claims, he often had to correct drafts she had approved. Def.'s Mem. at 7, 26–27; DSUF ¶¶ 35–36, 67(b)-(d), 84–85, 87. The Office produces twelve examples, but Small reasonably argues that only four reflect objective errors on her part. *See* Pl.'s Opp'n at 22–26. And on at least one occasion, Cuellar expressed dissatisfaction with a draft that Small approved, but he ultimately made no changes. *Compare* Pl.'s Ex. 14 at 2–3, ECF No. 21-14, *with* Pl.'s Ex. 15 at 2, ECF No. 21-15. Was it reasonable for Cuellar to believe that Small was performing poorly in this area? That is a matter for a fact-finder, not summary judgment.

So too with staff training, which the Office also repeatedly cites as an example of Small's poor performance. Based largely on deposition testimony from Cuellar and other employees, it asserts that Small trained staff infrequently and inadequately. Def.'s Mem. at 29–30; DSUF ¶¶ 38–49. But Small did conduct some training, and she claims that Cuellar never provided concrete guidance on what additional training she was supposed to provide. PSDMF ¶¶ 40–47; Pl.'s Ex. 19 at 2–4, ECF No. 21-19; Pl.'s Ex. 20 at 2–4, ECF No. 21-20. Sorting out these competing narratives is a job for the jury.

3.  <u>The shifting explanations for Small's termination</u>. "[C]hanges and inconsistencies in the stated reasons for the adverse action" can be evidence of pretext. *Brady*, 520 F.3d at 495 n.3. Here, the reasons for Small's termination have evolved. A jury must decide whether these shifts raise the specter of unlawful conduct.

At both the September 5 performance review and the October 16 termination meeting, Cuellar mainly criticized Small's failure to take items off his plate (including her failure to review draft press releases thoroughly) and her failure to train staff adequately. Def.'s Attach. G

at 25–27; Pl.'s Opp'n at 46; Def.'s Reply at 20–23.  He also mentioned an occasion when, in his view, Small had disregarded his instructions.  Def.'s Attach. G at 26.  But ever since Small's termination, the pile of reasons has noticeably grown.  Indeed, Cuellar solicited written statements from his staffers about Small's performance *after* he fired her.  Pl.'s Ex. 7 at 7–8.  And the staffers provided their statements after Small filed this action in May 2019.  Pl.'s Ex. 31 at 2, ECF No. 21-31; Pl.'s Ex. 32 at 12, ECF No. 21-32; Pl.'s Ex. 33 at 2, ECF No. 21-33; Pl.'s Ex. 34 at 2, ECF No. 21-34; Pl.'s Ex. 35 at 2, ECF No. 21-35.  Perhaps Cuellar was simply looking for corroboration of Small's poor performance, but a jury might also see this as an attempt to collect post hoc justifications.

In its Answer and responses to interrogatories, the Office reiterated the reasons that Cuellar had given at the September 5 and October 16 meetings, but it also cited two reasons that Cuellar had not clearly mentioned at those meetings:  Small's alleged mistreatment of female staffers and her repeated requests for a pay raise.  Answer ¶ 1; Pl.'s Ex. 27 at 6–7, ECF No. 21-27.

And Cuellar gave yet more reasons at his deposition.  He discussed an occasion when Small falsely claimed that the Office's financial administrator had approved her pay raise suggestions.  Pl.'s Ex. 6 at 24, ECF No. 21-6.  He also accused Small of taking personnel files to her home and trying to use them as leverage to access her Office computer.  *Id.* at 21–23.  He discussed these incidents as part of a larger exchange about the reasons he fired Small, yet he had not learned about the alleged transgressions until *after* he fired her.  *Id.* at 21–24.  Even so, the Office highlights these incidents in a section of its opening brief about Small's "Problematic Performance."  *See* Def.'s Mem. at 26, 32 & n.9.  Then in reply, the Office claims that it "has

10

never proffered these as bases for [Small's] dismissal," but "they do further justify termination." Def.'s Reply at 24 (emphasis omitted).

The D.C. Circuit has repeatedly affirmed that shifting and inconsistent justifications are probative of pretext. *See, e.g.*, *Geleta v. Gray*, 645 F.3d 408, 413 (D.C. Cir. 2011). The Office argues that its reasons have not materially changed over time because they have always been about Small's poor job performance. *See* Def.'s Reply at 18–25 (citing *Ames v. Nielsen*, 286 F. Supp. 3d 70 (D.D.C. 2017)). But a jury might think differently, given the additional justifications that cropped up later, such as Small's requests for a pay raise and her alleged dishonesty. And recall that there are legitimate questions about whether the two main original justifications (inadequate review of written work product and inadequate staff training) were well founded. If they were not, this might signal to a jury that the Office saw fit to come up with other reasons because the original ones were not the real reasons.

### IV.

The Office has strong arguments that Cuellar fired Small for legitimate reasons. But given the identified disputes, judgment for the Office on all counts is improper at this stage.

For all these reasons, it is hereby

**ORDERED** that Defendant's [20] Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. Defendant's [20] Motion is GRANTED as to Count II of Plaintiff's [5] Amended Complaint. Defendant's [20] Motion is DENIED as to Counts I, III, and IV of Plaintiff's [5] Amended Complaint.

**SO ORDERED**.

Dated: September 10, 2020                                     TREVOR N. McFADDEN, U.S.D.J.

11